## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LUXOTTICA RETAIL NORTH AMERICA
INC., d/b/a PEARLE VISION,
        Plaintiff,

Case No. 1:10-cv-374

vs.

Dlott, J.
Litkovitz, M.J.

CAS-MAN, INC., et al
        Defendants.

### REPORT AND RECOMMENDATION[1]

This civil action is before Court on plaintiff Luxottica Retail North America Inc. d/b/a

PEARLE VISION®, successor-in-interest to Pearle Franchise Corporation and Pearle Vision,

Inc.'s (collectively, "Pearle Vision") motion for default judgment (Doc. 9), and supporting

affidavits and documentary evidence. (Doc. 9, Exs. A-D; Exs. 1-10 attached to Ex. A; Exs. 1-2

attached to Ex. B; Ex. 1 attached to Ex. C.)

### I. FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 2010, Pearle Vision filed a complaint against defendants CAS-MAN, Inc.

("CAS-MAN") and Lolita Padilla Maningas ("Maningas") alleging claims for trademark

infringement and false designations of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114,

1125(a). The complaint also alleges common law claims of trademark infringement and unfair

competition, as well as claims for breaches of written agreements between Pearle Vision and

defendants and unjust enrichment. (Doc. 1).[2] The complaint seeks damages and an injunction

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and
Recommendation.

[2] Pearle Vision also filed a motion for preliminary injunction the same day the complaint was
filed. (Doc. 2). Pearle Vision's request for injunctive relief will be addressed herein, as its motion for
default judgment seeks permanent injunctive relief.

prohibiting defendants' unauthorized use and display of Pearle Vision's trademarks and service marks in connection with two retail optical stores located in Streamwood, Illinois (Pearle Vision Store #8158) and Bloomingdale, Illinois (Pearle Vision Store #8091) following the termination of defendants' franchise agreements with Pearle Vision. (Doc. 1).

The complaint alleges the following:

Pearle Vision operates and franchises distinctive optical retail stores throughout the United States. (Doc. 1, ¶ 5). Pearle Vision has developed a distinctive optical retail system, which includes proprietary rights in certain valuable trade names, service marks, trademarks, logos, emblems and indicia of origin. (Doc. 1, ¶¶ 17-25). Pearle Vision has also developed a comprehensive operating system for all Pearle Vision franchisees to protect its image and to ensure uniform, high quality standards. (Doc. 1, ¶¶26-30).

Defendants CAS-MAN and Maningas entered into franchise and other agreements with Pearle Vision, and owned and operated two retail optical stores located in Streamwood, Illinois ("Store #8158") and Bloomingdale, Illinois ("Store #8091"). (Doc. 1, ¶¶ 31-34). In connection with their ownership and operation of the Stores, defendants used Pearle Vision's trade names, service marks, and registered trademarks (the "Pearle Vision Marks") in accordance with the terms and conditions of the Pearle Vision Franchise Agreement. *Id.*

Under the terms of the Franchise Agreements, defendants were obligated to make monthly payments to Pearle Vision for royalties, advertising fees, and other fees in connection with their operation of the Stores. (Doc. 1, ¶ 35).

Paragraphs 13, 14, and 26 of the Franchise Agreements required defendants to pay Pearle Vision a royalty of 7.0% of monthly Gross Revenues for the preceding calendar month in

exchange for defendants' use of the Pearle Vision systems and the Pearle Vision Marks. (Doc. 1, ¶ 36).

Paragraphs 13, 14, and 26 of the Franchise Agreements also required defendants to pay Pearle Vision an advertising and marketing contribution of a certain percentage of their monthly Gross Revenues and Base Gross Revenues for the preceding calendar month in exchange for advertising, marketing, brand management and merchandising expenditures made by Pearle Vision on behalf of the Pearle Vision franchise system. (Doc. 1, ¶ 37). Additionally, Paragraph 26 of the Franchise Agreements obligated defendants to pay for all merchandise ordered and received from Pearle Vision. (Doc. 1, ¶ 38).

In March 2007 and February 2008, defendant Maningas executed a personal guaranty as to each store, unconditionally and irrevocably personally guaranteeing the performance of each and every obligation of CAS-MAN and Maningas under any agreement with Pearle Vision. (Doc. 1, ¶¶ 39-40).

On December 5, 2007, Maningas executed a Confidential/Covenant Not to Compete Agreement in connection with the Streamwood Franchise Agreement. On March 23, 2007, Maningas similarly executed a Confidential/Covenant Not to Compete Agreement (the "Bloomingdale Non-Compete Agreement" and together with the Streamwood Non-Compete Agreement, "the Non-Compete Agreements") in connection with the Bloomingdale Franchise Agreement. (Doc. 1, ¶¶ 41-42).

Under both the Non-Compete Agreements and paragraph 19(B) of the Franchise Agreements, Maningas agreed that during the term of the Franchise Agreements and for a period of one year following the termination or expiration thereof, she would not cooperate or

-3-

participate in a retail optical store or optometric office within a radius of three miles from the Stores. (Doc. 1, ¶ 43).

By letter dated July 16, 2009 (the "Streamwood Notice of Default"), Pearle Vision notified defendants that they were in default of their obligations under the Streamwood Franchise Agreement by virtue of their failure to: (a) timely pay royalties, advertising fees, and for merchandise ordered and received; and (b) comply with all terms and payment obligations separately contained in the Bloomingdale Franchise Agreement. (Doc. 1, ¶ 46).

By a separate letter July 16, 2009 (the "Bloomingdale Notice of Default" and together with the Streamwood Notice of Default, "the Notices of Default"), Pearle Vision notified Maningas that she was in default of her obligations under the Bloomingdale Franchise Agreement by virtue of her failure to: (a) timely pay royalties, advertising fees, and for merchandise ordered and received; (b) timely pay rent and associated charges to the landlord of the premises at Store #8091; and (c) comply with all terms and payment obligations separately contained in the Streamwood Franchise Agreement. (Doc. 1, ¶ 47).

Defendants failed to cure the defaults set forth in the Notices of Default. Consequently, on December 9, 2009, Pearle Vision issued separate letters to each of defendants' Stores, notifying defendants that as a result of their failure to cure the outstanding defaults, both Franchise Agreements were effectively terminated as of the date of the letter. (Doc. 1, ¶¶ 49-50).

Upon termination, defendants were required to comply with the post-termination obligations contained in Paragraph 34 of the Franchise Agreements. (Doc. 1, ¶ 51). Defendants violated their post-termination obligations under the Franchise Agreements by failing to make the necessary changes or removals at the Stores and by failing to transfer all telephone numbers and

related directory listings to Pearle Vision. (Doc. 1, ¶¶ 52-53, 55). Defendant Maningas violated

her post-termination obligations under the Bloomingdale Franchise Agreement and the

Bloomingdale Non-Compete Agreement by continuing to operate Store #8091 as a PEARLE

VISION® Store and unlawfully using various Pearle Vision Marks in connection with her

continued operation. (Doc. 1, ¶ 56).[3]

Based upon the foregoing, Pearle Vision seeks an award of damages under the Lanham

Act, 15 U.S.C. § 1117, as a result of Maningas' violations of the Lanham Act, 15 U.S.C. § 1114

(trademark infringement), and 15 U.S.C. § 1125(a) (false designations), by virtue of her

continued operation of Store #8091.[4] (Doc. 1, p. 23). Pearle Vision seeks additional monetary

---

[3]Store #8158 is no longer in operation. (Doc. 9, Ex. A, Affidavit of Paul Eisen, ¶7).

[4] 15 U.S.C. § 1114 of the Lanham Act (trademark infringement), provides:

(1) Any person who shall, without the consent of the registrant-

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

Additionally, 15 U.S.C. § 1125(a), of the Lanham Act (false designations) provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

damages against defendants stemming from their breaches of the Franchise Agreements, Guaranties, and Non-Compete Agreements for failing to pay amounts owed for royalties, advertising fees, merchandise, and other financing fees. (Doc. 1, p. 24). The complaint also requests an Order from the Court permanently enjoining defendants from unlawfully using the Pearle Vision Marks following the termination of their Franchise Agreements and from otherwise violating their post-termination obligations under the Franchise Agreements and the Non-Compete Agreements. (Doc. 1, pp. 22-24).

The record before the Court shows: (1) the complaint in this action was filed against defendants on June 9, 2010 (Doc. 1); (2) the summons and complaint were duly served on defendants (Docs. 5, 6); (3) no answer or other defense has ever been filed by defendants; (4) default has been entered on the civil docket of the Clerk of this Court (Doc. 8) and no proceedings have been taken by defendants since the default was entered; (5) defendants are not in the Military Service, *see* The Servicemembers Civil Relief Act, as amended December 19, 2003, Pub. L. 108-189, Sec.1, 117 Stat. 2835, and amended Jan. 28, 2008, Pub. L. 110-181, Div. A, Title V, § 584(a), 122 Stat. 128, 50 App. U.S.C. §§ 521(a), (b)(1) (Doc. 9, Ex. A, Affidavit of Paul Eisen); and (6) defendants are not infants or incompetent persons. (*Id.*).

Pearle Vision now seeks default judgment against defendants. Pearle Vision's motion

---

association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

requests: (1) money damages as a result of Maningas' violations of the Lanham Act; (2) damages

against both defendants for their breaches of the Franchise Agreements and Guarantees; (3) an

award of attorney's fees, court costs, and litigation expenses incurred by Pearle Vision in

connection with this lawsuit; and (4) injunctive relief relating to defendants' post-termination

obligations. (Doc. 9, p. 15-16).  In support of its motion, Pearle Vision has submitted the detailed

affidavits of Paul Eisen, Erica Krouse, Mark Lutz and Roger Treece. (Doc. 9, Exs. A-D).

## II. ANALYSIS

The procedure governing the entry of default and default judgment is provided by Fed. R.

Civ. P. 55, which states in pertinent part:

> (a) Entry.  When a party against whom a judgment for affirmative relief is sought
> has failed to plead or otherwise defend as provided by these rules and that fact is
> made to appear by affidavit or otherwise, the clerk shall enter the party's default.

> (b) Judgment.  Judgment by default may be entered as follows: (1) By the Clerk.  When
> the plaintiff's claim against a defendant is for a sum certain or for a sum which can by
> computation be made certain, the clerk upon request of the plaintiff and upon affidavit of
> the amount due shall enter judgment for that amount and costs against the defendant, if
> the defendant has been defaulted for failure to appear and if he is not an infant or
> incompetent person. (2) By the Court.  In all other cases the party entitled to a judgment
> by default shall apply to the court therefor; but no judgment by default shall be entered
> against an infant or incompetent person unless represented in the action by a general
> guardian, committee, conservator, or other such representative who has appeared therein.
> If the party against whom judgment by default is sought has appeared in the action, the
> party (or, if appearing by representative, the  party's representative) shall be served with
> written notice of the application for judgment at least 3 days prior to the hearing on such
> application. If, in order to enable the court to enter judgment or to carry it into effect, it is
> necessary to take an account or to determine the amount of damages or to establish the
> truth of any averment by evidence or to make an investigation of any other matter, the
> court may conduct such hearings or order such references as it deems necessary and
> proper and shall accord a right of trial by jury to the parties when and as required by any
> statute of the United States.

Fed. R. Civ. P. 55(a), (b).

Once a default is entered against a defendant, that party is deemed to have admitted all of

the well-pleaded allegations in the complaint, except those relating to damages. *Antoine v. Atlas*

-7-

*Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995). "A judgment by default may not be entered without a hearing on damages unless the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Cincinnati Ins. Co. v. Dorsey Constr. Co.*, No. 1: 09-cv-3, 2010 WL 518171, at *3 (S.D. Ohio Feb. 2, 2010) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

Upon review of the record, the undersigned finds that default judgment is warranted in this case. Defendants' failure to respond to the complaint, application for entry of default, and motion for default judgment has made it abundantly clear that they have no intention of defending this action. As set forth above, the well-pleaded allegations of the complaint set forth specific facts showing that defendant Maningas' continued operation of Store #8091 in violation of her post-termination obligations under the Bloomingdale Franchise Agreement and the Bloomingdale Non-Compete Agreement and continued use of various Pearle Vision Marks in connection with her continued operation violate the Lanham Act, 15 U.S.C. § 1114 (trademark infringement) and 15 U.S.C. § 1125(a) (false designations). The complaint further alleges facts showing that defendants breached the Franchise Agreements and the Guaranties by their failure to pay amounts owed for royalties, advertising fees, merchandise, and other financing fees as required by those agreements. Pearle Vision has therefore established liability on the part of defendants in order to obtain injunctive relief and recover damages, attorney fees and costs under the Lanham Act. *See Antoine*, 66 F.3d at 110.

Additionally, Pearle Vision has provided sufficient affidavit and supporting documentary evidence establishing its entitlement to injunctive relief and to the damage amount requested. Accordingly, the undersigned finds that neither an evidentiary hearing nor oral argument is

-8-

required on any aspect of Pearle Vision's motion.

     A.    *Lanham Act Damages*

     Monetary recovery for violations of the Lanham Act is provided for by 15 U.S.C. § 1117.

Pursuant to 15 U.S.C. § 1117(a), a defendant's violation of § 1125(a) entitles the plaintiff to

recover the infringing defendant's profits, any damages sustained by the plaintiff, and the costs of

the action. *See Broan Mfg. Co., Inc. v. Associated Distrib.*, Inc., 923 F.2d 1232, 1235 (6th Cir.

1991). In cases involving a franchisee's unauthorized use of a franchisor's trademarks, "[a] court

has considerable discretion in determining the proper amount to award in these circumstances

and equitable considerations govern the court's assessment of profits." *Pearle Vision, Inc. v. Star

Vision Centers, Inc.*, Case No. 08-00046-CG-C, 2008 WL 2329196, * 2 (S.D. Ala. 2008) (citing

*Burger King Corp. v. Mason*, 710 F.2d 1480, 1495 (11th Cir. 1983)). *See also U.S. Structures,

Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997) ("Section 1117(a) grants a

district court a great deal of discretion in fashioning an appropriate remedy in cases of trademark

infringement."); *Broan,* 923 F.2d at 1237 (Lanham Act plaintiff need only establish fact of

damages with reasonable, not absolute, certainty). Thus, under the Lanham Act, "[i]n assessing

profits the plaintiff shall be required to prove defendant's sales only. . . ." 15 U.S.C. § 1117(a).

As such, "[a]ny doubts about the actual amount of gross sales or profits will be resolved against

the infringing party." *Pearle Vision, Inc.*, 2008 WL 2329196, at *2 (citing *J. Thomas McCarthy,

Trademarks And Unfair Competition* § 30:66 (4th ed. 1998) (citing *Louis Vuitton S .A. v.

Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985)).

     In this case, the appropriate amount of damages should be based on the amount of

royalties Pearle Vision was entitled to receive under its Franchise Agreements with defendants.

*See Pearle Vision, Inc. v. Star Vision Centers, Inc.*, Case No. 08-00046-CG-C, 2008 WL

2329196, * 3 (S.D. Ala. June 3, 2008) (citing *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d

1512, 1519 -1520 (11th Cir. 1990) ("The use of lost royalties to determine the actual damages

incurred by a victim of trademark misuse is well established in this court.")). *See also La Quinta*

*Corp. v. Heartland Properties LLC*, 603 F.3d 327, 342 n. 10 (6th Cir. 2010) (Under the Lanham

Act, "[r]oyalties normally received for the use of a mark are the proper measure of damages for

misuse of those marks.") (citation omitted).

Based on a review by Pearle Vision's finance manager Mark D. Lutz of the corporate

records for Store #8091, as well as Pearle Vision's corporate records for the designated

marketing area encompassing the location of Store #8091, the evidence establishes that the

dispensing sales for Store #8091 during the time period that defendant Maningas was infringing

upon the Pearle Vision Marks equaled approximately $237,273.35. (*See* Doc. 9, Ex. C, Lutz

Aff., ¶ 9). Pearle Vision is therefore entitled to the royalties derived from these profits. Based

on the 7.0% royalty provided for in the Franchise Agreements, Pearle Vision is entitled to

$16,609 in royalties for the infringing period. (*Id.*, ¶ 10).

Additionally, if a violation of Lanham Act is found to be willful, a court must award

treble damages unless it finds extenuating circumstances. 15 U.S.C. § 1117(b). Infringement is

willful, and thus triggers enhanced damages, if the defendant "had knowledge that its actions

constitute an infringement." *Microsoft Corp. v. McGee,* 490 F. Supp.2d 874, 880 (S.D. Ohio

2007) (citing *Ford Motor Co. v. Cross*, 441 F. Supp.2d 837, 852 (E.D. Mich. 2006) (quoting

*N.A.S. Import, Corp. v. Chenson Enters., Inc*., 968 F.2d 250, 252 (2nd Cir. 1992)). "A

defendant's continued infringement after notice of his wrongdoing is probative evidence of

willfulness." *Microsoft,* 490 F. Supp.2d at 880 (citations omitted).

The evidence establishes that Pearle Vision sent letters to defendant Maningas explaining

-10-

that her activities were unlawful and that she was no longer authorized to operate Store #8091 as

of December 9, 2009. (Doc. 9, Ex. A, Eisen Aff., ¶23; Eisen Aff., Ex. 10). Maningas, however,

refused to cease operating Store #8091. (Doc. 9, Ex. A, Eisen Aff., ¶29). Because Maningas

continued to operate store #8091, despite notice of her unlawful actions, the undersigned finds

that her infringement is willful. There is no evidence of extenuating circumstances prohibiting

an award of treble damages. As such, Pearle Vision is entitled to an award of treble damages

against defendant Maningas in the amount of $49,827.

      B.     *Past Due Amounts for Unpaid Royalties, Advertising Fees, Merchandise, and Other Finance Fees*

Pearle Vision is also entitled damages for unpaid royalties, advertising fees, merchandise,

and other finance fees stemming from defendants' breaches of the Franchise Agreements and the

Guaranties. The evidence establishes that defendants owed $68,950.27 as of June 30, 2010, in

connection with Store #8158, and that Maningas owed $82,177.78 as of June 30, 2010, in

connection with Store #8091. (*See* Doc. 9, Ex. B, Krouse Aff., ¶17; Krouse Aff., Ex. 1; *see also*

Krouse Aff., ¶18; Krouse Aff., Ex. 2).

      C.     *Attorney Fees*

The Lanham Act permits an award of "reasonable attorney fees to the prevailing party" in

exceptional cases. 15 U.S.C. § 1117(a). Attorney fees are awarded where the acts of

infringement can be characterized as "malicious, fraudulent, willful, or deliberate." *Johnson v.

Jones*, 149 F.3d 494, 503 (6th Cir. 1998) (quoting *Hindu Incense v. Meadows*, 692 F.2d 1048,

1051 (6th Cir. 1982)). *See also Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir.

2004). Paragraph 30 of the Franchise Agreements also requires defendants to reimburse Pearle

Vision for any reasonable attorney's fees, experts' fees, court costs, and litigation expenses

incurred by Pearle Vision relating to its successful enforcement of the Franchise Agreements.

(Doc. 9, Ex. A, Eisen Aff., Exs 1 and 2, Franchise Agreements, ¶30).

The Court finds that Pearle Vision is the prevailing party in this action and that defendants' acts of infringement were willful. Therefore, the undersigned concludes that Pearle Vision is entitled to reasonable attorney fees and costs. Accordingly, based upon the affidavit Roger A. Treece, Esq., the Court finds that Pearle Vision is entitled $12,406.26 in attorney's fees and litigation expenses. (Doc. 9, Ex. D, Treece Aff., ¶5).

### D.    Injunctive Relief

Pearle Vision further seeks to permanently enjoin defendants from unlawfully using and displaying Pearle Vision's registered trademarks and service marks in connection with Store # 8158 and Store # 8091 after the termination of their franchise agreements with Pearle Vision. The undersigned finds that Pearle Vision's request for injunctive relief is well-taken.[5]

In addition to money damages, a court may grant a trademark owner permanent injunctive relief pursuant to the Lanham Act. 15 U.S.C. §§ 1116(a), 1125(c)(2). "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms,* 130 S.Ct. 2743, 2756 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

---

[5] Upon a careful review of the record and applicable law, the undersigned finds that an evidentiary hearing is not warranted in order to award permanent injunctive relief. *See Microsoft*, 490 F. Supp. 2d at 883-84 (awarding statutory damages, attorneys' fees and costs, and injunctive relief based upon the plaintiff's application for a default judgment and supporting affidavits). *Cf. Coleman v. Payne*, 698 F. Supp. 704, 705-07 (W.D. Mich. 1988) (granting injunctive relief pursuant to motion for default judgment supported by affidavit where defendant's infringement of the plaintiffs' copyrights was willful).

-12-

With regard to the first factor, irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from infringement or unfair competition. *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991). Thus, once there is a showing of infringement, a specific finding of likelihood of entry or irreparable harm is not required for injunctive relief in a trademark infringement case. *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999). Accordingly, based upon the finding of trademark infringement in this case, the first factor of irreparable injury is established.

The undersigned finds that the second factor is also met as the Sixth Circuit has held that where there is potential for future harm from infringement, there is no adequate remedy at law. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). Here, there is potential for future harm from infringement because defendants are continuing their infringing activities after notice from Pearle Vision and the filing of this lawsuit.

With regard to the balance of hardships, the potential harm to Pearle Vision outweighs any harm that defendants may suffer. Notably, defendants face no hardship in complying with their obligations under the Franchise, Non-Compete and Guaranty Agreements and refraining from trademark infringement. *Audi*, 469 F.3d at 550. Pearle Vision, however, faces hardship from loss of sales, loss of reputation, and goodwill. *Id.*

Finally, it is in the public's interest to issue a permanent injunction to prevent consumers from being misled by defendants' continued unlawful use of the Pearle Vision Marks. *Audi,* 469 F.3d at 550. In summary, the Court finds that Pearle Vision is entitled to a permanent injunction.

### IT IS THEREFORE RECOMMENDED:

1.      Pearle Vision's motion for default judgment (Doc. 9) should be **GRANTED**;

2.      Default judgment should be entered in Pearle Vision's favor and against defendants CAS-

MAN and Maningas for a total of **$213,361.31**, which is calculated as follows:

(A)  An award of damages against defendant Maningas in the amount of $49,827 for Maningas' violations of the Lanham Act, pursuant to 15 U.S.C. § 1117;

(B)  An award of damages against defendants, jointly and severally, in the amount of $68,950.27, plus pre- and post-judgment interest, for defendants' breaches of the Streamwood Franchise Agreement and the Streamwood Guaranty;

(C)  An award of damages against defendant Maningas in the amount of $82,177.78, plus pre and post-judgment interest, for Maningas' breaches of the Bloomingdale Franchise Agreement and the Bloomingdale Guaranty;

(D)  An award of attorney's fees against defendants, jointly and severally, in the amount of $12,406.26, pursuant to Paragraph 30 of the Franchise Agreements and/or 15 U.S.C. § 1117(b).

3.  Defendants should also be **PERMANENTLY ENJOINED** and restrained from:

(A)  manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the Pearle Vision Marks;

(B)  using the telephone number(s) listed in any telephone directories under Pearle Vision's name pursuant to Paragraph 34 of the Franchise Agreements

(C)  operating or participating in a retail optical store or optometric office within a radius of three miles from each of the Stores for a period of one year following the termination of the Franchise Agreements.

4.  Defendants should also be **ORDERED** to: (a) remove from the Stores all signs, banners, labeling, packaging, advertising, promotional, display, and point-of-purchase materials that bear or display any of the Pearle Vision Marks, name, symbols, or slogans; (b) cooperate with Pearle Vision to provide for an orderly transition and disposition of any assets used in the operation of the

-14-

franchises; (c) return possession of the Stores' premises to Pearle Vision in as good a condition as when received by defendants; (d) change the Stores' appearances in accordance with Pearle Vision's directions so as to clearly distinguish them from a PEARLE VISION® store at defendants' expense; (e) transfer all telephone numbers and related directory listings to Pearle Vision; (f) provide Pearle Vision with a copy of all records relating to optical services that were provided in connection with defendants' former PEARLE VISION® franchises; and (g) return to Pearle Vision all PEARLE VISION® materials, including, but not limited to, the franchise manual, containing any of Pearle Vision's trade secret and proprietary information and also return all proprietary inventory.

4.     Pearle Vision, within **thirty (30) days** of any Order adopting this Report and Recommendation, shall submit to the Court proof of entitlement to all costs, disbursements, and expenses related to this action that Pearle Vision is seeking to recover.

5.     In light of the recommendation that Pearle Vision be awarded permanent injunctive relief pursuant to its motion for default judgment, Pearle Vision's motion for a preliminary injunction (Doc.2) should be **DENIED as MOOT**.

Date: 1/14/2011

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LUXOTTICA RETAIL NORTH AMERICA
INC., d/b/a PEARLE VISION,
      Plaintiff,

vs.

CAS-MAN, INC., et al
      Defendants.

Case No. 1:10-cv-374

Dlott, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).