**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LUXOTTICA RETAIL NORTH AMERICA
INC., d/b/a PEARLE VISION,
      Plaintiff,                        Case No. 1:10-cv-374

vs.                                     Dlott, J.
                                     Litkovitz, M.J.

CAS-MAN, INC., et al
      Defendants.

### REPORT AND RECOMMENDATION

This civil action is before Court on plaintiff Luxottica Retail North America Inc. d/b/a

PEARLE VISION®, successor-in-interest to Pearle Franchise Corporation and Pearle Vision,

Inc.'s (collectively, "Pearle Vision") motion to toll enforcement of the one-year non-compete

injunction (Doc. 27) and defendant Lolita Padilla Maningas' response in opposition. (Doc. 30).

### I. PROCEDURAL BACKGROUND[1]

Pearle Vision initiated this action against defendants CAS-MAN, Inc. ("CAS-MAN") and

Lolita Padilla Maningas ("Maningas") alleging claims of trademark infringement and false

designations of origin in violation of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331,

1337, and 1338(a), in connection with defendants' unauthorized use and display of Pearle

Vision's trademarks and service marks following the termination of defendants' franchise

agreements with Pearle Vision. (Doc. 1). On February 16, 2011, the Court permanently

enjoined Maningas and CAS-MAN from "[o]perating or participating in a retail optical store or

optometric office within a radius of three miles from [Maningas' prior franchise operations in

Streamwood, Illinois and Bloomingdale, Illinois] for a period of one year following the

termination of the Franchise Agreements." (Doc. 13).

---

[1] A complete factual background was provided in this Court's January 14, 2011 Report and
Recommendation (Doc. 12) and will not be repeated here.

Pearle Vision subsequently filed a motion for contempt (Doc. 16) asserting that Maningas continued to operate a retail optical store in violation of the February 16, 2011 Order. Pursuant to a show cause hearing held on June 29, 2011, the undersigned issued an Order directing Maningas to take specific steps, such as removing Pearle Vision materials from the Illinois stores, to ensure her compliance with the District Court's injunction. (Doc. 22). Another hearing was held on August 1, 2011, at which time Pearle Vision informed the Court that Maningas was in compliance with the February 16, 2011 Order; consequently, the undersigned recommended that Pearle Vision's contempt motion (Doc. 16) be denied as moot. (Doc. 26).[2]

On August 11, 2011, Pearle Vision filed the instant motion seeking to toll the enforcement of the one-year non-compete injunction against defendants set forth in the February 16, 2011 Order. (Doc. 27). Pearle Vision asserts that because Maningas continued to operate optical retail centers in violation of the parties' non-compete covenant and this Court's one-year injunction order, equity demands that the Court toll enforcement of the one-year non-compete injunction and commence the one-year period upon the District Court's entry of an order. In response, Maningas contends that tolling the injunction period is improper under Federal Rule of Civil Procedure 54(c). For the foregoing reasons, the undersigned recommends that Pearle Vision's motion to toll enforcement of the one-year non-compete injunction be granted in part and denied in part.

## II. ANALYSIS

The choice of law provision in the franchise agreements provides that all claims at law or equity shall be governed by the laws of the state of Ohio. (Doc. 2, Ex. C, Exs. 1, 2). Accordingly, the Court will apply the substantive law of Ohio to the contractual issues presented in the instant motion.

---

[2] The District Judge adopted the Report and Recommendation on August 26, 2011. (Doc. 28).

"In Ohio, a non-compete contract cannot expire while its signatories litigate its enforceability." *MP TotalCare Servs., Inc. v. Mattimoe*, 648 F. Supp.2d 956, 964 n.6 (N.D. Ohio 2009) (citing *Homan Inc. v. A1 AG Servs., L.L.C.*, 885 N.E.2d 253, 259 (Ohio Ct. App. 2008); *Trim-Line of Toledo v. Carroll*, No. L-86-176, 1987 WL 7056, at *2 (Ohio Ct. App. Feb. 25, 1987)). *See also Weickert v. Bowden*, 936 N.E.2d 984, 986 (Ohio Ct. App. 2010) ("[A] noncompete agreement cannot expire in litigation while the enforceability of the agreement is being litigated."). To hold otherwise "would be sanctioning litigation as a delay tactic. All an individual would have to do would be to contest the negative covenant in court until the restrictive time period elapsed. If this were true, covenants not to compete would be virtually ineffective." *Trim-Line*, 1987 WL 7056, at *2.

Here, defendants CAS-MAN and Maningas entered into franchise agreements with Pearle Vision for retail optical stores located in Streamwood, Illinois and Bloomingdale, Illinois. (Doc. 1, ¶¶ 31-34). Maningas executed non-compete agreements in connection with these franchise agreements and agreed that for a period of one year following the termination or expiration of the franchise agreements she would not operate or participate in retail optical stores or optometric offices within a three-mile radius of the stores. (Doc. 1, ¶¶ 41-43). The franchise agreements were terminated December 9, 2009, at which time Maningas, per her agreement with Pearle Vision, was obligated to comply with the terms of the non-compete covenants. (Doc. 1, ¶¶ 49-51). However, this Court found that Maningas was not in compliance with the terms of the covenants or the Court's February 16, 2011 Order until the August 1, 2011 status conference. (Doc. 26).

Pearle Vision now seeks the full benefit of the one-year non-compete period to which Maningas agreed. Pearle Vision acknowledges that, per the terms of the agreements, the non-

compete covenants became enforceable on December 9, 2009 and would have, ostensibly, expired on December 9, 2010. However, Pearle Vision asserts that the non-compete agreements could not have expired while their enforceability was being litigated, relying on the holdings of *Weickert* and *Trim-Line.* The Court agrees.

In *Trim-Line*, the defendant-appellee ceased working for the appellant-plaintiff and, despite having signed a covenant not to compete for two years, began directly competing with the plaintiff's business immediately after leaving its employ. *Trim-Line*, 1987 WL 7056, at \*2. The two-year covenant had almost lapsed during the pendency of the litigation and the defendant argued that he was no longer bound by its terms. *Id.* The Sixth District Ohio Court of Appeals determined that, as the defendant had knowingly bargained in exchange for a two-year non-compete agreement, the plaintiff "should not be denied the benefit of [its] bargain simply because the time period specified in the negative covenant all but expired while [the plaintiff] sought to enforce the contract through the court system." *Id.* The court then prospectively applied a restrictive time limit from the date the lower court entered an order on remand. *Id.* at \*3.

In the instant matter, Maningas signed covenants not to compete with Pearle Vision following the termination of their franchise agreements. Yet, from December 2009, the time the franchise agreements were terminated, until August 2011, Maningas continued to operate optical retail stores in violation of the non-compete agreements, as well as violating the Court's February 2011 Order. *See* Doc. 26. Just as the *Trim-Line* plaintiff was afforded the "benefit of the bargain," Pearle Vision should be afforded the benefit of the non-compete agreements made with Maningas. The enforcement of the one-year non-compete injunction should be equitably tolled to ensure that Maningas is prohibited from engaging in the proscribed commercial activity

for the full one-year period as provided by the contracts and the Court's February 2011 Order. To hold otherwise would inequitably deprive Pearle Vision of a contracted right based on Maningas' failure to adhere to contractual obligations, reward Maningas' dilatory conduct in the instant lawsuit, and sanction delay in litigation as a means of evading enforcement of non-compete agreements. *See Trim-Line*, 1987 WL 7056, at \*2; *see also Homan*, 885 N.E.2d at 259 (where prior employee violated non-compete agreement, trial court abused its discretion when it failed to enforce the covenant and erroneously held that it had expired and was unenforceable).

Maningas' primary argument in opposition to tolling the enforcement of the non-compete injunction is that Federal Rule of Civil Procedure 54 prohibits this Court from altering the terms of the default judgment entered in this matter, which included a provision that Maningas not compete "for a period of one year following the termination of the Franchise Agreements." (Doc. 13). Rule 54(c) provides, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Maningas essentially contends that an extension of the non-compete agreement in this matter beyond the one-year period following termination of the Franchise Agreements would violate the terms of the default judgment already entered in this case. Maningas' argument is not well-taken.

Contrary to Maningas' argument, the relief sought by Pearle Vision in its pleadings and throughout this case is the same as that provided in the Court's default judgment: enforcement of the one-year non-compete agreements. Pearle Vision initially filed a complaint and request for a preliminary injunction in June of 2010 seeking, *inter alia,* enforcement of the one-year non-compete agreements. (Doc. 2). Maningas failed to file a timely response and in September 2010 Pearle Vision moved for default judgment. (Doc. 9). Maningas continued to neglect this litigation and on February 16, 2011, the Court granted Pearle Vision's motion for default

judgment, awarded damages, and ordered enforcement of the one-year non-compete agreements. (Doc. 13).

Despite the court-ordered injunction, Maningas continued to violate the non-compete agreements. Pearle Vision then filed a motion for contempt (Doc. 16) seeking compliance with this Court's injunction to enforce the non-compete agreements. Only after Maningas was ordered to appear before this Court (Doc. 18, June 10, 2011 Order to Show Cause) did Maningas become an active participant in this lawsuit and finally comply with the Court's injunction.

Pearle Vision has consistently sought the same relief – enforcement of the one-year non-compete agreements – and this Court has ruled that Pearle Vision is entitled to the benefit of the parties' bargain in those agreements. By tolling enforcement of the one-year non-compete injunction, which simply enforces the terms of the contract to which Maningas agreed, the Court is not providing relief that was not initially demanded in Pearle Vision's complaint and motion for default judgment; rather, the Court is ensuring that Pearle Vision receives the relief to which it is entitled.

Moreover, Maningas' argument ignores that Rule 54(c) further provides that "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded it in its pleadings." Fed. R. Civ. P. 54(c). This portion of the Rule "makes clear that a judgment should give the relief to which a party is entitled, regardless of whether it is legal or equitable or both." Fed. R. Civ. P. 54 advisory comm. note (West 1937). As a result of Maningas' ongoing refusal to abide by the terms of her contractual obligations and her dilatory conduct in this lawsuit, Pearle Vision has had to expend attorneys' fees and costs for over one year to gain Maningas' compliance. The Federal Rules permit and equity requires that the one-year non-compete injunction be tolled in this case.

Equally unavailing is Maningas' argument that this matter may be subject to a stay due to her bankruptcy petition. The Court finds that this argument is moot as the bankruptcy petition has been closed. *See In re Lolita P. Maningas*, No. 11-28821 (N.D. Ill. Oct. 21, 2011) (Doc. 25, Notice of case closure).[3]

In light of these findings, the Court finds that Ohio law and equity weigh heavily in favor of tolling the enforcement of the one-year injunction not to compete and applying the one-year non-compete agreements prospectively. However, the Court does not agree with Pearle Vision's position that it is entitled to an order that the one-year injunction should begin running from the date of the District Court's final ruling on the issue. Rather, as this Court has determined that Maningas was in compliance with the injunction as of August 1, 2011, this time should be credited and the length of the injunction should be reduced accordingly. *See Homan*, 885 N.E.2d at 258-59 (court deducted time that defendant had abided by non-compete agreement); *Mitchell's Salon & Day Spa, Inc.*, 931 N.E.2d 1172, 1176 (Ohio App. Ct. 2010) (affirming trial court's ruling that defendant had to abide by one-year non-compete agreement for 11 months, crediting defendant for time he was in compliance); *Trim-Line*, 1987 WL 7056, at \*3 (noting that it is appropriate to subtract the time that an individual is in compliance when prospectively enforcing a non-compete agreement). Accordingly, the Court finds that Pearle Vision is entitled to prospective enforcement of the one-year non-compete injunction less the time that Maningas has been in compliance.

## IT IS THEREFORE RECOMMENDED THAT:

1. Pearle Vision's motion to toll enforcement of the non-compete injunction (Doc. 27) should be **GRANTED** in part and **DENIED** in part; and

---

[3] "Federal courts may take judicial notice of proceedings in other courts of record" and the undersigned has done so here by obtaining the decisions from the Illinois Bankruptcy Court. *See Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969); *see also Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).

2.  Defendants should be **PERMANENTLY ENJOINED** and restrained from operating or
    participating in a retail optical store or optometric office within a radius of three miles
    from the prior franchise operations in Streamwood, Illinois and Bloomingdale, Illinois
    for a period of one year, less the time defendants have been in compliance with the
    Court's February 16, 2011 Order.

Date: 11/14/2011

Karen L. Litkovitz
United States Magistrate Judge

LUXOTTICA RETAIL NORTH AMERICA
INC., d/b/a PEARLE VISION,
      Plaintiff,

vs.

CAS-MAN, INC., et al
      Defendants.

Case No. 1:10-cv-374

Dlott, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Lolita Padilla Maningas
1152 Newburg Court
Carol Stream, Illinois 60188

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☑ Agent
☐ Addressee

B. Received by ( Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
   *(Transfer from service label)*

7003 2260 0002 6723 4316

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540